CASE 4—CONTESTED WILL—MARCH 18.

## Williams' Ex'r, &c., v. Williams, &c.

APPEAL FROM OWEN CIRCUIT COURT.

1. WEIGHT GIVEN VERDICT IN WILL CASE.—The same effect is to be given in this court to the verdict of a jury in a will case as in any other civil cause. Where, however, an attack upon a will is altogether unsustained by any evidence, this court will, by its mandate, direct the circuit court to remand the case to the probate court, with directions to admit it to record.

2. MODE OF TAKING APPEAL FROM ORDER PROBATING OR REJECTING WILL.—In order to prosecute an appeal to the circuit court from an order of the county court probating or rejecting a will, it is sufficient if it be made to appear, by the filing of either a transcript or a statement, who the parties, appellant and appellee, are, and that a certain judgment was rendered by the county court at a certain

Williams' Ex'r, &c., v. Williams, &c.

time, from which the appellants desire to appeal. Technical strictness should not be required.

3. OBJECTION TO COMPETENCY OF WITNESS.—Where any part of the testimony of a witness is competent, an objection to his competency as a witness should be overruled.

4. COMPETENCY OF TESTIMONY IN CONTESTED WILL CASE.—In a contest over a will upon the ground of the testator's want of mental capacity, the parties in interest are competent to testify as to the conduct, conversation and character of the testator.

5. INSTRUCTIONS TO JURY.—Where a testator had given the greater part of his estate to the church of which he was a member, and the will was contested upon the ground that he was a monomaniac on religion, the court erred in instructing the jury that, in order to find for the will, they must believe that the testator was not dominated by an "unnatural or irrational bias of mind, so as to overrule and control his own rational will power." The issue as to whether the testator was of sound or unsound mind at the making of his will should have been submitted to the jury in as simple language as possible.

6. VALIDITY OF WILL.—A testator may exercise his choice in selecting the objects of his bounty, and the fact that he may have "a bias" in doing so does not invalidate his will.

J. H. DORMAN FOR APPELLANTS.

1. As to burden of proof in establishing the testator's sanity. (Fee, &c., v. Taylor, 83 Ky. Reports, 259; Milton v. Hunter, &c., 13 Bush, 170; Hawkins v. Grimes, 13 B. M., 270; Sechrest's Will, 4 Met.. 167 to 173; Will of Cole, 1 American Probate Reports, 342; Flood v. Pragoff, 79 Ky., 612.)

2. The legal presumption is in favor of the sanity of a testator. (Hawkins v. Grimes, 13 B. M., 270; Milton's Will, 13 Bush, 170; Will of Cole, 49 Wis., 147; Frear v. Williams, 7 Baxter, 550; 1 Am Pro. Rep., 85.)

3. As to testable capacity, and what constitutes a sound mind within the meaning of the statute. (Wise, &c., v. Foote, &c., 81 Ky., 15; Phillips' Will, 81 Ky., 332; Hoskins, &c., v. Hoskins, &c., 9 Ky. Law Rep., 916; Bledsoe's Will, 1 Southwestern Rep. No. 1, 10; Schieldnecht v. Romff, 9 Ky. Law Rep., 121; Broaddus v. Broaddus, 10 Bush, 299; Carpenter v. Carpenter, 8 Bush, 288; Mundy v. Taylor, 7 Bush, 491; Kevil, &c., v. Kevil, &c., 2 Bush, 615; Lillard's Will, 1 Bush, 116; Hawkins v. Grimes, 13 B. M., 257; Watson v. Watson, 2 B. M., 74; Reed's Will, 2 B. M., 79; Overton's Will, 18 B. M, 63; Tudor v. Tudor, 17 B. M., 394; Howard v. Coke, 7 B. M., 658; George Weir's Will, 9 Dana, 434; Allison v. Allison, 7 Dana, 90; Violett's Will, 1 Bibb, 617; Harper's Will, 4 Bibb, 244; McDaniel's Will, 2 J. J. Mar., 332; Elliott's Will, 2 J. J. Mar., 341; Harrison's Will, 1 B. M., 351; Sarah, &c., v. Miller, 1 Duv., 260; Sechrest's Will, 4

Met., 165; 1 Am. Pro. Rep., 243, 258 and 383; Chaffin Case, 32 Wisconsin, 558; Will of Blakely, 48 Wisconsin, 294; Lewis' Will, 51 Wisconsin, 101; Brown v. Riggin, 94 Illinois, 560; Carpenter v. Calvert, 83 Illinois, 62; Rutherford v. Morris, 77 Illinois, 397; Meeker v. Meeker, 75 Illinois, 266; 15 Am. Law Reg., 255; Ray's Med. Jur., 124, sec. 105; Frazier v. Jennison, 42 Mich., 206; Pierce v. Pierce, 38 Mich., 412; Schouler on Wills, secs. 68, 83.)

4. The best evidence of capacity at the making of a will is the will itself. (Reed's Will, 2 B. M., 80; Watson's Will, 2 B. M., 74; Overton v. Overton, 18 B. M., 63; McMeekin v. McMeekin, 2 Bush, 80; George Weir's Will, 9 Dana, 440; Will of Bowditch, 32 Louisiana Annual, 1055; Herbert, Tudor, v. Winn, 24 Louisiana Annual, 386; 21 Louisiana Annual, 60; 1 Am. Pro. Rep., 247 and 259; Schouler on Wills, secs. 67 and 68.)

5. The law imposes no obligation to provide for collateral relations, either during life or at death. A man has as complete liberty to deprive them of any share in his estate as if they were strangers to his blood. (Will of Bowditch, 1 Am. Pro. Rep., 255; Will of Blakely, 1 Am. Pro. Rep., 290; Bledsoe's Will, 1 Southwestern Rep., 11.)

6. There is no such thing known to our law as an inofficious or undutiful will. (Stoke's Will, 13 Bush, 184; Broaddus' Will, 10 Bush, 306; Porschet v. Porschet, 82 Ky. Reports, 93; Tudor v. Tudor, 17 B. M., 395; Will of Blakely, 48 Wisconsin, 294; Rice v. Rice, 50 Michigan, 448; 1 Am. Pro. Rep., 290; 3 Am. Pro. Rep., 133; Young v. Ridenbaugh, 67 Missouri, 574.)

7. It is immaterial if a testator was affected by insane delusions, *unless* the insane delusion entered into the making of the will. (James *et al.* v. Langdon, 7 B. M., 197; Schieldnecht v. Romff, 9 Ky. Law Rep., 120; 1 Am. Pro. Rep., 257; Rice's Will, 3 Am. Pro. Rep., 132; Schouler on Wills, secs. 159, 187 and 190; Chaffin Case, 32 Wisconsin, 558; Will of Blakely, 48 Wisconsin, 294; 7 Ky. Law Rep., 104.)

8. There is no proof that testator was influenced or dominated by any unnatural or irrational bias of mind at the time he executed said paper.

a. There must be proof of actual influence unduly used. (Porchet v. Porchet, 82 Ky., 93; Wise v. Foote, 81 Ky., 15; Lillard's Will, 1 Bush, 123; Broaddus' Will, 10 Bush, 304; Lucas, &c., v. Cannon, &c., 10 Bush, 652; Sechrest's Will, 4 Met., 174; Stevens v. Vancleave, 4 Wash. C. C. R., 262.)

b. It was not proper to intimate to the jury the possibility of the testator's mind having been influenced or dominated by some unnatural or irrational bias at the time and in the act of executing said paper. (Milton v. Hunter, 13 Bush, 171.)

9. The motion made by proponents of the will to dismiss the appeal in the Owen Circuit Court for want of transcript of the *order* or *judg-*

Williams' Ex'r, &c., v. Williams, &c.

*ment* probating the will in the Owen County Court should have been sustained. (Gen. Stat., 395, ch. 28; Pryor v. Mizner, &c., 79 Ky., 235.)

T. J. HARDIN on same side.

1. The will was properly executed. (Gen. Stats., chap. 113, sec. 5.)

2. As to the amount of mental capacity required to make a good will. (McDaniel's Will, 2 J. J. M., 333; Elliott's Will, 2 J. J. M., 341; Harrison's Will, 1 B. M., 351; Allison v. Allison, 7 Dana, 92; Sechrest v. Edwards, 4 Met., 165; Phillips v. Phillips, 81 Ky., 330; Wise, &c , v. Foote, &c., 81 Ky., 12; Hoskins, &c., v. Hoskins, &c., 9 Ky. Law Rep., 916.)

3. The court should have dismissed the appeal, because no transcript of the order of the county court admitting the will to probate was filed in the circuit court. (Gen. Stats., ed. 1887, chap. 28; Pryor v. Mizner, 79 Ky., 234; Jones v. Jones, 3 Met., 268.)

4. The use of the words "unnatural and irrational bias" in each of the instructions given to the jury was misleading and prejudicial. (Milton, &c., v. Hunter, &c., 13 Bush, 171.)

5. Persons interested in defeating the will were not competent witnesses for the contestants. (Civil Code, sec. 606, subsec. 2; Smith v. James, 34 N. W. Rep., 309; Tindel v. Newberger, 31 N. W. Rep., 177; Waters v. Davis, 2 S. W. Rep., 695; Hana v. Bank of Jonesville, 1 Southern Rep., 140; Lerch v. Brasheer, 10 N. E. Rep., 58; Brace v. Blake, 17 N. E. Rep., 66; Blake v. Ronke, 38 N. W., 392; 2 Statute Law, 1541; Gen. Stats., chap. 113, sec. 13; Civil Code, sec. 605; Flood v. Pragoff, 79 Ky., 612; Higdon's Heirs v. Higdon's Devisees, 6 J. J. M., 48; Hopkins v. Faeber, 5 S. W. Rep., 749.)

A. DUVALL and ALEX P. HUMPHREY of counsel on same side.

WM. LINDSAY for appellees.

1. The instructions properly presented the law of the case except as to the burden of proof, and in that respect they were prejudicial to appellees, and not to appellants. The issue was whether the supposed testator made a will when he had a sound and disposing mind, ungoverned by an unnatural or irrational bias of mind that overruled and controlled his will. Unless he was free from such unnatural and irrational bias, he did not have a sound mind. (Tudor's case, 17 B. M., 394; Wise v. Foote, 81 Ky., 15; Sherley v. Sherley, 81 Ky., 240.)

2. The fact that the supposed testator had been insane, and confined in a lunatic asylum for a period of eight months, and the further fact that his brother became a lunatic and died in an asylum, raise the inference of insanity in the blood of the family, and neutralize the otherwise legal presumption of mental soundness. (Wharton & Stille's Med. Jur., vol. 1, sec. 255.)

3. Where insanity is shown to have once existed, the burden of proof to establish a lucid interval or mental restoration is upon the party who asserts it. (Schouler on Wills, sec. 189; Jackson v. Van Dusen, 5 Johnson, 159; 9 Pa. St., 152.)

4. Where proof of delusions are shown, as in this case, the burden of showing testamentary capacity requires those who propound the will at all events to overcome whatever tends to prove that the delusions and the testamentary disposition were connected. (Schouler on Wills, sec. 190.)

5. The filing by the contestants of a statement in the nature of a petition was sufficient to authorize them to prosecute the appeal. The filing of a transcript was not necessary. (Jones v. Jones, 3 Met., 266.)

LINDSAY AND BOTTS on same side.

1. It is not sufficient to assign as a ground for a new trial "that the verdict is not sustained by sufficient evidence," or "that the verdict is contrary to the law and the evidence." Such grounds are too vague and indefinite to raise any question. (Covington Street Railway Co. v. City of Covington, 4 Ky. Law Rep., 833; Maxwell v. Dudley, 13 Bush, 403; Artsman v. Thoma, 4 Ky. Law Rep., 446; Hornback v. Mendel, 8 Ky. Law Rep., 875; Ohio Valley Railway and Mining Co. v. Kuhn, 9 Ky. Law Rep, 467.)

2. The appeal to the circuit court was properly taken. It was not necessary to file a transcript of the county court proceedings. (Gen. Stats., chap. 113, secs. 27, 35; Jones v. Jones, 3 Met., 266; Pryor v. Mizener, 79 Ky., 233.)

3. The heirs of the decedent were competent witnesses. (Milton, &c., v. Hunter, &c., 13 Bush, 169; Cave v. Cave, 13 Bush, 452; Flood, &c., v. Pragoff, &c., 79 Ky., 607; Phillips' Ex'r v. Phillips' Adm'r, 81 Ky., 328; Wharton on Evidence, sec. 464.)

4. The verdict in a will case is to be treated upon appeal as the verdict in any other case, and will not be set aside unless flagrantly against the evidence. (Gen. Stats., chap. 113, sec. 27; Broaddus v. Broaddus, 10 Bush, 299; Phillips' Ex'r v. Phillips' Adm'r, 81 Ky., 331.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

This is a contest between the devisees of Joseph F. Williams upon the one side, and his heirs upon the other, over his will. It was executed on May 11, 1881, and he died in 1887. It having been admitted to probate in the county court, his heirs took an appeal to the circuit court, where it was rejected; and of this his executor and the devisees are now complaining.

Under our present statute the same effect is to be given in this court to the verdict of a jury in a will case as in any other civil cause. Where, however, an attack upon a will is altogether unsustained by any evidence, this court will, by its mandate, direct the circuit court to remand the case to the probate court, with directions to admit it to record. We are, therefore, now asked to do so in this instance by the propounders of the will.

As the case must return for another trial, it would be improper to enter upon a discussion of the evidence *pro et con*, and it is sufficient to say that many witnesses have testified upon each side, and their evidence is very conflicting. The request will not, therefore, be granted. Nor can it be said that the verdict was flagrantly against the evidence; and unless this be so, the finding of a properly instructed jury upon the facts will not be disturbed any more in a case of this character than in any other civil action.

A motion was made in the circuit court by the propounders to dismiss the appeal taken by the contestants from the order of the county court admitting the will to record, the ground being that no transcript of the proceedings in the latter court, or copy of its judgment, had been filed as a part of the appeal papers in the circuit court.

The contestants had, when the appeal was taken, filed in the circuit court a statement setting forth the names of the parties, appellants and appellees; the decease of the testator; the names of his heirs-at-law; the probate by the county court at a time therein

named of a writing purporting to be, but which they deny is, his will, and that an appeal was thereby taken from its action.

It is not suggested that the statement is defective; but it is urged that an appeal could not be taken by the filing of it alone; and that as the appeal is from the judgment below, a copy of it must be filed.

Our statute does not say how an appeal from the county court to the circuit court in a will case shall be taken. It merely gives the right to it.

In Jones, &c., v. Jones, &c., 3 Met., 266, it does not appear from the report of the case that any transcript of the county court proceedings was filed. It was there said: "It was only necessary for the parties who desire to take an appeal to the circuit court to have filed a transcript of the proceedings in the county court with the clerk of the circuit court, with the names of the appellants and appellees, and to have had process issued and served on the appellees."

In that case, however, as in this one, the appellants filed a petition which this court treated as a statement, and it was held sufficient to maintain the appeal. We see no reason to rule otherwise. The statement in this case sets forth every fact necessary to give the circuit court jurisdiction, and upon it summons was issued. There was, therefore, nothing substantial in the objection. Upon the trial, in the absence of admission in any way, the production of the county court judgment would be necessary; but while, as was said in the case above cited, and as was decided in Pryor v. Mizner, &c., 79 Ky., 232, an appeal may be taken by filing a transcript of the county court proceedings

with the circuit court clerk and suing out summons,
yet the latter case does not decide that such a mode
is exclusive.   The Jones case, in fact, decides other-
wise, and the other case above cited is not in conflict
with it.   As the statute does not prescribe what shall
be done to take the appeal, it is sufficient if it be
made to appear by the filing of either a transcript or
a statement who the parties, appellant and appellee,
are, and that a certain judgment was rendered by the
county court at a certain time, from which the ap-
pellants desire to appeal.   Technical strictness should
not be required.   Form is only to be observed so far
as it is necessary to the desired end.   The motion to
dismiss the appeal was properly overruled.

As there must be another trial, it is proper to
notice a question of evidence.   Several of the con-
testants were introduced as witnesses upon that side.
They testify to the conduct, the conversation and char-
acter of the testator.   Their evidence is not, however,
confined altogether to transactions with him, or those
done or not done by him, or to his conversation.
There appears to have been no objection, save upon
the score of their competency as witnesses.   The ob-
jection was not directed to particular portions of their
testimony, but looked to their entire exclusion as wit-
nesses.   It was proper, therefore, to overrule it, even
if their evidence in the respects mentioned had been
incompetent.   It was not, however.   Section 605 of
our Civil Code makes every person of understanding
competent to testify, saving some exceptions men-
tioned in the succeeding section, and which says:
"No person shall testify for himself concerning any

verbal statement of, or any transaction with, or any act done or omitted to be done by, an infant under fourteen years of age, or by one who is of unsound mind or dead when the testimony is offered to be given, except for the purpose and to the extent of affecting one who is living, and who, when over fourteen years of age and of sound mind, heard such statement, or was present when such transaction took place, or when such act was done or. omitted."

While this statute greatly enlarged the competency of persons as witnesses, yet it intended to put them all upon an equal footing.

This is not an action, however, to establish a claim against a decedent, and thus reach his estate. In such a case the claimant can not testify to any statement of the deceased, or transaction with him. If permitted to do so, there would be no equality. In such a case the one who would be the litigant if alive, being silent in death, the other, in fairness, is required by the law to be silent also.

In a case like this one, however, all the litigants may testify. They are upon an equal footing; and to exclude them from doing so would restrict the operation of a remedial statute to an extent not intended by the law-making power.

This is shown by the fact that this court has repeatedly so decided, and the statute has in this respect remained unchanged. (Milton, &c., v. Hunter, &c., 13 Bush, 163; Cave's Devisees v. Cave's Heirs, 13 Bush, 452; Flood, &c., v. Pragoff, &c., 79 Ky., 607; Phillips' Ex'r v. Phillips' Adm'r, 81 Ky., 328.)

The decedent was a bachelor, and had been a member

of the Baptist Church for many years. He had accumulated an estate of about twenty-five thousand dollars. He gave it all, with the exception of four or five thousand dollars, to that church and its institutions. The will is assailed upon the ground that he was a monomaniac upon religion. There is no question of undue influence. It is solely whether he was of unsound mind when the will was executed.

The court below properly refused the instructions asked by the propounders, but the two given *sua sponte* by it were also objectionable.

The one is substantially the counter or negative of the other. It is, therefore, unnecessary to recite both of them. The first one, after, in its first clauses, properly instructing the jury in reference to the execution of the paper offered as the will, says: "And that at the time and in the act of executing said paper he had sufficient capacity and strength of mind and memory to take a comprehensive survey of his estate, and to know of what it consisted, and to remember and know who were the natural objects of his bounty, and that at the time, and in the act of executing said paper, he had sufficient will power of his own to dispose of his estate with a fixed purpose and will of his own, *and was not at the time and in the act of executing said paper dominated by some unnatural or irrational bias of mind, so as to overrule and control his own rational will power*, you will write on said paper your verdict thus: We, the jury, find this to be the true last will of Joseph F. Williams."

This instruction and the counter one were calculated to mislead the jury. A testator, if mentally compe-

tent, and acting from his own will, may exercise his
choice as to the objects of his bounty; and the fact
that he may have "a bias" in doing so does not in-
validate his will.   It is true the instruction says that
it must have been such an unnatural and irrational
bias as to dominate and control the rational will power
of the testator; but this qualification does not render
it unobjectionable.   The jury may have found against
the paper in contest upon the ground that the relig-
ious bias or convictions of the testator were, in their
opinion, unnatural or irrational, and that they con-
trolled him in the disposition of his estate.   The in-
struction is too sweeping.    It left the varying and
often unreasonable notions of the jurymen as to what
constitutes an unreasonable or irrational bias in will
making to govern.   It gave the jury more latitude
than the law authorizes, and was, therefore, calculated
to mislead them, or it at least did not, in language
calculated to be understood by them, confine their
consideration of the case within proper limit.   The
only issue was, whether the testator was, at the mak-
ing of his will, of sound or unsound mind.   If he
was then a monomaniac upon religion, then he was of
unsound mind.     This issue should have been sub-
mitted to them in as plain and simple language as
possible.   The law of the case would have been em-
braced by the instruction, if there had been omitted
from it the portion to which we have alluded as ob-
jectionable, and which we have italicised.   Experience
teaches us that especially in cases of this character
are jurymen apt to be controlled by their prejudices
and preconceived notions, if latitude for their play

be afforded. It is, therefore, highly important that they should be guided in their deliberations by instructions not calculated to mislead them. We are satisfied that this may, and probably did, occur in this instance, and the judgment is, therefore, reversed, and cause remanded for a new trial in conformity to this opinion.