## Taylor Coal Company v. Miller.

(Decided February 29, 1916.)

### Appeal from Ohio Circuit Court.

1. Master and Servant—Duty and Liability When Master Furnishes Transportation to Servant to and From Work.—Where the master furnishes the servant transportation to and from the place of his work, it is the duty of the master to exercise ordinary care to provide reasonably safe means and instrumentalities, and if the servant is injured while being so transported by the failure of the master to exercise ordinary care to furnish reasonably safe means or instrumentalities, he may recover damages for the injuries so sustained.

2. Master and Servant—Assumed Risk.—Where the master furnishes transportation for the servant in going to and from his work, the servant does not assume the risk of danger attending the unsafe or defective condition of the means or instrumentalities furnished by the master.

3. Evidence—Opinion Evidence—Experts.—It is permissible in the examination of a witness introduced as an expert to submit a hypothetical question and ask his opinion thereon, and if the witness has personal knowledge of the matter he is inquired of concerning, he may give his opinion based on such knowledge; but the question should not be put in such form as to make the answer the conclusion of the witness instead of his opinion.

4. Master and Servant—When Servant May Recover for Ordinary Negligence.—When the servant is injured by a defective appliance or an unsafe place furnished by the master, he may recover if the master has been guilty of ordinary negligence.

5. Damages—Personal Injury—Diminishing of Liability for on Account of Disease Not Attributable to Accident.—Where a person who is injured, brings suit to recover damages therefor, and is or becomes afflicted with a disease not produced by the injury, his recovery should be diminished in proportion to the impairment attributable to the disease. But if the disease was wholly caused by the injuries he received, the fact that he has the disease does not authorize the diminution on account of the impairment of his power to earn money.

6. Appeal and Error—Records—Transcripts—Penalty for Furnishing Illegible Transcript.—Where the transcript of the evidence is

typewritten on very thin paper and with a worn ribbon, the fee allowed to the clerk for such work will be diminished in the discretion of the court. Records and transcripts must be typewritten, and a black typewriter ribbon and good weight paper must be used in making up transcripts and records.

GLENN & SIMMERMAN and H. P. TAYLOR for appellant.

ERNEST WOODWARD, OTTO C. MARTIN and BEN D. RINGO for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, Miller, was employed as a "loader" by the appellant coal company in its mine, and as the place at which he worked was about two miles from the mine entry, the company had for a long time been in the habit of carrying Miller, and other miners who worked where he did, to and from their work in cars.

In February, 1914, while Miller was being carried from the mine entry to his place of work in company with other miners, on a coal car drawn by a mule, the car was thrown off the track, in consequence of which Miller received injuries; and in this suit for damages there was a judgment in his favor for two thousand dollars.

The derailment of the car, as shown by the evidence of Miller and his witnesses, was due to the defective condition of the track, as well as to the fact that the car was going at an unsafe rate of speed on account of the unmanageable mule that was pulling it. Inasmuch as the coal company furnished the means by which Miller and other employes were carried to and from their work, it was the duty of the company to exercise ordinary care to provide reasonably safe methods of transportation, and if Miller was injured by defects in the track, or by the unmanageable character of the mule, or by other causes attributable to the negligence of the coal company, he had a cause of action against it. L. & N. v. Walker, 162 Ky., 209; Sandy Valley & Elkhorn Ry. Co. v. Bridgman, 168 Ky., 219.

It is contended, however, by counsel for the coal company that as the derailment of the car was caused principally by the mule that was being driven by one of the company's men going faster than was prudent, Miller assumed the risk of any danger growing out of the misconduct of this mule. But the mule was not under the

control of Miller, nor was it being driven by him. It was owned by the coal company, was being driven by one of its men, and Miller did not assume any risk, due to the misconduct of the mule, while riding on the car furnished for his use by the company.

Nor did he assume the risk of defects in the track that contributed to the derailment of the car. He had nothing to do with the repair of the track and it was the duty of the coal company to keep it in such repair as to leave it in reasonably safe condition for the use to which it was put.

There is of course conflict in the evidence as to the qualities of the mule as well as to the condition of the track, but there was sufficient evidence showing the defective condition of the track as well as the bad character of the mule, to take the case to the jury and to sustain the verdict.

On the trial of the case it appeared that Miller had tuberculosis, and it was the contention of his counsel that the injuries he received produced the tuberculosis. In support of this theory two or three physicians were introduced and among other questions they were asked this: ''State whether or not in your judgment as a physician, the tuberculosis would be the natural and proximate result of the injury I have supposed?'' And they answered, ''It would.'' The objection urged to this question and answer is that the witnesses were permitted to state their conclusion on the facts instead of their opinion. It is of course admitted that it was competent for these physicians to give an opinion as to whether or not the injuries received by Miller would have caused the tuberculosis with which he was then afflicted. But they were asked not for an expression of opinion but for their conclusion.

It is a well settled rule in the law of evidence in this jurisdiction, as said in Aetna Life Ins. Co. v. Bethel, 140 Ky., 609, that ''It is permissible in the examination of a witness introduced as an expert, to submit a hypothetical question, and ask his opinion thereon; or, if the witness has personal knowledge of the matter he is inquired of concerning, he may give his opinion based on such knowledge. But the question should not be put in such form as to make the answer the conclusion of the witness, instead of his opinion. It is the office of the expert to express an opinion and the province of

the jury to draw its own conclusions from the opinion so expressed. Here the witness not only expressed his opinion, but also drew from his own opinion a conclusion upon a question which was the very matter in issue. The facts upon which the opinion of the expert was desired should have been submitted to him in a question, and his answer should have been his opinion and not his conclusion." To the same effect are Smart v. Kansas City, 208 Mo., 162, 14 L. R. A. (N. S.), 565; Cumberland Telp. & Telg. Co. v. Peacher Mill Co., 129 Tenn., 374, 53 L. R. A. (N. S.), 1045.

We do not understand counsel for Miller to controvert the correctness of this principle, but they insist that it is only applicable when a hypothetical question is submitted to an expert and should not be applied when the expert is testifying after a personal examination of the person concerning whom he is called on to express an opinion. But we do not see how any sound distinction can be made in the application of this rule between the answer to a hypothetical question and the answer to a question based on personal observation. Whether the witness is testifying as an expert from information imparted to him by a hypothetical question, or from information gained by a personal observation, he is in both instances called on to give an expression of opinion arrived at from information received by him, and in neither case should he be asked or permitted to give more than an expression of his opinion. An expert who is called on for the purpose of enlightening the jury concerning a matter that they might not understand without the assistance of some person skilled in the particular matter under consideration, is allowed to give his opinion for the benefit of the jury, but not to express a conclusion upon this opinion, as that is the province of the jury.

Counsel further argue that this evidence was not prejudicial to the substantial rights of the defendant, and therefore does not constitute reversible error. There might be cases in which this character of evidence would not be error. But under the peculiar facts of this case this expert evidence was very material. There is much conflict in the evidence as to whether the injuries Miller received had anything to do with the tubercular disease with which he was afflicted and from which he died shortly after the trial; and, besides this, there

was evidence that several members of his family had died with this disease. So that it was of unusual importance that this expert evidence should have been received by the jury in the form required by the rules controlling its admission.

Complaint is also made of the wording of the instruction allowing the jury to diminish the damages in the event they reached the conclusion that the ability of Miller to earn money was diminished by the tubercular disease with which he was afflicted. Several instructions were offered on this subject by counsel for the defendant, and the court gave the jury one that does not seem to us to present correctly this feature of the case. In lieu of instruction "Y" the jury should be told on another trial that although they may believe from the evidence that plaintiff was permanently injured by the negligence of the defendant and his power to earn money was diminished or destroyed thereby, yet if they further believe from the evidence that he was afflicted with tuberculosis of the throat and lungs, which diminished or destroyed his power to earn money, and this disease was not caused by or directly attributable to the injuries he received, the jury, if they find for the plaintiff, should not allow anything for the impairment or destruction of his earning capacity caused by this disease. But if they believe that the tuberculosis was wholly caused by and directly attributable to the injuries he received, the jury should not diminish the finding, if any, in his behalf on account of this disease.

In cases like this the plaintiff is entitled to recover if his injuries were caused by the ordinary negligence of the defendant, and so the word "gross" should be omitted from the instructions. In lieu of instruction number two the jury should be told that if they find for the plaintiff, the measure of his recovery is such a sum in damages as they may believe from the evidence will fairly and reasonably compensate him for his mental and physical suffering, if any, and for the impairment or destruction, if any, of his ability to earn money that may have resulted directly from his injuries, if they were caused by the ordinary negligence of the defendant, but not exceeding in all the sum of ten thousand dollars; and the jury should read and consider instruction "Y" in connection with this instruction.

There is another matter to which attention should be called. The transcript of the evidence is typewritten on very thin paper such as is used in making carbon copies, and about half of it was written with a worn or faded ribbon, so that it is very trying on the eyes to read any of it. All records for this court should be typewritten with a black record ribbon, and on good weight paper, so that the matter will be easy to read. The condition of this transcript is such that we feel warranted in condemning it, and the official stenographer will only be alowed one-half the usual charges for this transcript.

The judgment is reversed, with directions for a new trial in conformity with this opinion.