## Illinois Central Railroad Company v. Townsend.

(Decided December 19, 1924.)

### Appeal from Grayson Circuit Court.

1. Evidence—Physician's Opinion Derived from Plaintiff's Statements Not in Course of Treatment, but for Purpose of Having Physician Testify, Held Incompetent.—Expert testimony of physician as to plaintiff's injuries, consisting entirely of his opinion derived not from objective symptoms but from statements of plaintiff during examination made for purpose of testifying in action, is incompetent.

2. Evidence—Hypothetical Question Assuming Facts Not in Evidence, Improper.—In personal injury action, hypothetical question based upon hypothesis that sudden shock or application of force to plaintiff's body had been shown, for which there was no support in the evidence, is improper.

3. Evidence—Confusing Hypothetical Question Assuming that Injury, However Caused, Produced Conditions Testified to, Held Improper.—In personal injury action, a hypothetical question so framed as to be confusing, and based on assumption that injury

to plaintiff, however caused, produced conditions discovered by physician, was bad, as such question should be based on facts in evidence as to injury, and should conclude with inquiry whether such facts could have produced the conditions, and whether they were permanent.

4.    Master and Servant—Instruction Railroad has Duty of Preventing Hand Cars from Colliding Held Erroneous as Making Employer Insurer.—In action against railroad for injuries suffered in collision of hand cars, instruction that it was duty of defendant to so operate its cars as to prevent collisions was erroneous as making defendant insurer when measure of its duty was to exercise ordinary care.

5.    Master and Servant—Testimony as to Improper Brakes Inadmissible Under Allegations Charging Negligence in Operating Cars.—In action for injuries in collision of hand cars, where complaint alleged only negligence of defendant's agents and servants in operating cars, testimony as to faulty condition of brakes was improperly admitted as not within issues.

TRABUE, DOOLAN, HELM & HELM, L. A. FAUREST and ALLEN P. CUBBAGE for appellant.

HAYNES CARTER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On September 24, 1921, the appellee and plaintiff below, Mort Townsend, who was 42 years of age, was a member of an extra gang in the employ of appellant and defendant below, Illinois Central Railroad Company, and was engaged in laying new rails in the track of defendant, a part of which runs through Grayson county. Another extra gang was engaged in the same work, and each of them were transported to their work and carried their tools and some supplies in a gasoline motor hand car. Between two and three hundred yards from the point where the gang or crew with which defendant was working they started their car for the day's work, and while going around about a six degree curve, it collided with the car of the other crew, going in the opposite direction, inflicting the alleged injuries to plaintiff for which he sought recovery in this action. He stated in his petition that the injuries for which he sued "were caused solely by the negligence of the defendant, its agents, servants and employes in charge of said cars and that the said defendant, its agents and servants negligently and carelessly suffered, caused and permitted the said cars to collide and that but for said negligence on its part, the said collision would not have occurred."

The answer was a denial of all the material aver-
ments of the petition, with a plea of contributory negli-
gence, which was denied, and upon a trial before a jury
it, under the instructions given by the court, returned a
verdict "for the plaintiff in the sum of $900.00 for loss
of time and permanent injury." Defendant's motion
for a new trial was overruled and from the judgment
pronounced on the verdict, it prosecutes this appeal.

There was but little conflict in the testimony as to
how the accident happened, though practically all the wit-
nesses disagreed with plaintiff as to the speed of the two
cars, both at the time they were first observed approach-
ing each other and when the collision happened, as well
as upon the fact as to what effect the collision had on
plaintiff at the time. Plaintiff says that when he discov-
ered the approaching car of the other crew moving south
around the curve he was sitting on the floor of his car
with his feet hanging over its front end and between two
other members of the crew, which consisted of about ten
or a dozen persons; that he thereby had no opportunity
to jump from his car as other members of the crew did,
and that he laid his back on the floor of his car with his
feet and legs extending perpendicularly with the floor
so as to prevent injury to them by the collision; that di-
rectly after placing himself in that position the collision
occurred while, as he thinks, his car was running three
or four miles an hour and the other one "right fast," and
that the next thing he knew he was lying on the ground
at the end of the crossties when he discovered that he
was hurt in some manner in his back and in one of his
legs. The other witnesses testified that the car upon
which plaintiff was riding was almost stopped when the
collision occurred and that the other one was not travel-
ing exceeding two or three miles per hour, and that the
collision was not a severe one, although one witness tes-
tified that one of the back wheels of plaintiff's car was
off the track, and a small rod on its front which came in
contact with some part of the car was slightly bent.
It was also shown that most of those on plaintiff's car
jumped or stepped off of it before the collision, although
four or five of them were on it at the time of the collision,
including one of those sitting beside plaintiff and upon
whose arm he was reclining. The same witnesses tes-
tified that plaintiff made no complaint at the time of any
injury except to his leg, and that he was not rendered

senseless, but was standing and commenting on the collision with the other members of the crew. One of them had his finger upon the rod that was bent and it was injured and required the treatment of a physician, and the foreman, with other members of the crew, testified that the one so injured was sent to a physician by the foreman and that he also requested plaintiff to go to the physician but that he declined to do so upon the ground that he was not sufficiently injured to require such services. One of the cars was lifted off the track so as to let the other one by and the journey to the work was resumed.

The accident occurred on Saturday and plaintiff remained with his crew until Tuesday at noon, when he went home and did not report for work for something like three weeks, but at that time his place had been filled and he was not taken back. He does not pretend, nor did any one testify, that there was any bruise on any part of his body, nor was there any abrasion of the skin, and he never called on a physician for treatment at any time thereafter. He says that for the three weeks that he did not report for work he did jobs around the house and either during that time or thereafter worked upon his farm and also filled contracts with at least three different persons to get out and deliver certain quantities of crossties, the work of which he himself did, including not only the manufacture of the ties but also the work and labor of loading, hauling and unloading them at the point of delivery. He testified that his back would sometimes hurt him and especially after engaging in heavy work and that he had not been able to do that character of work as well as he had theretofore been.

If it should be conceded that the loss of time, testified to by plaintiff, and for which he sought and obtained recovery as stated in the verdict, was the proximate result of injuries he received in the collision, then that item, according to the wages he was then receiving, would amount to $53.76, which necessarily left the remainder of the verdict ($846.24) as compensation for permanent injuries under the statement in the verdict. It, therefore, becomes a pertinent inquiry as to whether the evidence was sufficient or competent to sustain that part of the verdict; and the contention that it was not, is one of the chief grounds for a reversal.

Plaintiff introduced as witnesses in his behalf Doctors Berry and DeSpain, both of whom examined him

at the request of himself and his attorney for the purpose of giving their testimony at the trial and not for the purpose of treatment. Each of them made his first examination at or about the time when the case was first set for trial, and something like six months after the collision, and Doctor Berry made his second one on the day of the trial and a few minutes before he took the stand. Neither of them observed any *objective* symptoms or indications of an injury, but they testified that because of statements and actions of plaintiff they discovered subjective symptoms consisting of tenderness in the muscles of the lumbar and sacral regions of the back, and a slight stiffness therein, both of which symptoms they were enabled to discover by the statements and actions of plaintiff, the tenderness because of his flinching, and the stiffness because of his action in walking. That testimony was objected to and defendant moved to exclude Doctor Berry's testimony as an entirety, but the objections to its introduction and the motion to exclude it were each overruled with exceptions.

This court had before it the admissibility of that character of testimony obtained solely for the purpose of testifying and not for treatment, and based upon the same facts emanating from the injured person, in the case of Chesapeake & Ohio Railroad Co. v. Wiley, 134 Ky. 461, and in a lengthy and exhaustive opinion it was held that it was incompetent, although it was recognized that any objective symptoms would be competent and that subjective ones would also be competent if they were testified to by a physician to whom application was timely made for treatment and not exclusively to obtain his expert testimony. The reasons for the rejection of the one and the admission of the other are elaborately pointed out in that opinion, and we do not deem it necessary to restate them here, for it has been followed in the later cases of John H. Radel Co. v. Borches, 147 Ky. 506; De-Haven v. Danville Gas Light Co., 150 Ky. 241, and C. St. L. & N. O. Ry. Co. v. Rowell, 151 Ky. 313. It is true that the two professional witnesses in this case did not expressly state in their testimony the history of the case that may have been given to them by plaintiff, but they were permitted to testify about his actions and stated that it was possible for him to simulate them for the occasion, and because of that possibility the opinion in the Wiley case held that the evidence of such subjective

symptoms discovered in the same manner by an *expert* witness who was not making the examination for the purpose of treatment, but only to qualify him as a witness, was incompetent, which ruling was adhered to in all the cited cases following that opinion where the direct question was presented.

Moreover, Doctor Berry was permitted to testify, and which the court declined to exclude on a motion made for that purpose, after this fashion:

> "Q. Doctor, might that condition that you found when you made this examination have resulted from sudden shock or the application of force to his body? A. It could have. A fall out of a barn loft, or slip over the pavement. Q. Assuming that he might have been injured in such a manner as to produce the condition you found at the time you made the examination the first time and at the last examination, in your opinion, is that condition permanent or not? A. I don't really think he will ever be as well in his back as he ought to have been. Injury to the spinal column seldom recovers. Q. State whether or not in your opinion, from his present condition, that he would be able to do heavy manual labor at this time? A. I don't really think he would."

That testimony was intended to elicit from the expert witness three very material facts: (1), as to the cause of the subjective symptoms to which the witness testified; (2), injurious effect upon the patient, *i. e.*, whether temporary or permanent, and (3), the present effect upon the patient as to his ability to labor.

The first fact was sought to be developed by a question based upon a hypothesis for which there was no supporting testimony in the record, in that, the inquiry of the witness was whether the subjective conditions he found could have resulted "from sudden shock or the application of force to the body;" when, under the evidence, the element of the occurrence of a sudden shock was at most but problematical, and there was no direct proof that any force had been applied to plaintiff's body. The proper question would have been to have incorporated the facts as to how the collision occurred, as testified to by plaintiff, and have the witness give his opinion based upon those facts. Ky. Traction and Terminal Co. v. Humphrey, 168 Ky. 611, and other cases following

it, including the very recent one of Wigginton v. Wigginton, 205 Ky. 613. Besides, the answer of the witness gave no reason for the condition he found that could in any wise be attributed to any proven fact happening at the time of the collision. He said, in substance, that the condition he found could have been produced by "a fall out of a barn loft, or slip over the pavement," when even a layman would know that much, but no such accident happened to plaintiff.

The propounded question seeking the testimony to establish the second fact was, to say the least of it, greatly confusing, and was based upon the assumption that the injury to plaintiff, whatever produced it, produced the conditions discovered by the witness. Under the rule of the cases, *supra,* the question should have been based upon the testified facts as to how the collision occurred and to have then inquired of the witness whether such facts could have produced the conditions, and whether they were or not permanent. Since the judgment must be reversed, we deem it proper to notice two other objections urged by defendant's counsel, one of which relates to the instructions, and the other to evidence of negligence not relied on in the petition.

The criticism of the instructions is directed to the first part of number 1, saying: "The court instructs the jury that it was the duty of defendant at the time and on the occasion complained of in the petition to so operate its cars as to prevent their colliding with each other," etc. It is correctly insisted that the excerpt makes the defendant an insurer against such accident when the correct measure of its duty was to exercise ordinary care to prevent them colliding, and the court on another trial will so modify the instruction.

The evidence as to other negligence than that charged in the petition, to which objection was made, was to the effect that the brakes on the other car were out of repair and would not work on the occasion complained of. It is insisted, and we think correctly, that since plaintiff charged that the collision was due *solely* to the negligence of defendant's agents and servants in *operating* the two cars, the testimony as to the faulty condition of the brakes was improper, under the well recognized rule that where a litigant specifies the negligence upon which he relies he will be confined thereto in his proof. If plaintiff desires to amend his petition so as

to include the additional negligence of defective brakes, he should be permitted to do so.

Wherefore, the judgment is reversed with directions to grant the new trial and for proceedings consistent with this opinion.