## Gibson et al. v. Crawford.

(Decided Feb. 22, 1935.)

VIRGIL P. SMITH, BEN V. SMITH & SON and R. C. TARTAR for appellants.

. B. J. BETHURUM for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

A certain paper, dated September 22, 1925, was probated as the will of A. J. Crawford. A contest, filed

by his widow, resulted in a judgment rejecting the paper, and the propounders (the collateral heirs) have appealed.

A. J. Crawford married Miss Kate Staples January 16, 1889. They lived together until March 4, 1930, when Mr. Crawford died. They had no children. On March 8th Mrs. Crawford presented to the county court the following paper as A. J. Crawford's will:

"Somerset, Ky.

"I, A. J. Crawford, do hereby will and bequeath to my wife, Kate S. Crawford, my entire estate both real and personal to have and to hold the same and dispose of as she sees fit. I appoint her as executrix and request no bond be required and no appraisement be made..

"This April 17th, 1922.

"[Signed]   A. J. Crawford.

"Attest:

"Emma Spencer,

"C. I. Ross."

A few days later the collateral kindred produced to the county court this paper:

"Know All Men By These Presents:

"That I, A. J. Crawford of Somerset, Kentucky, being of sound mind and disposing memory, do hereby make publish and declare this to be my last will and testament hereby revoking and cancelling any and all former wills and testaments by me heretofore made.

"First. I direct all of my funeral expenses and just debts be paid.

"Second. All of the residue of my estate whether it be personal property or real estate of whatever kind and character, I direct that same be divided and distributed in accordance with the Statute of Kentucky of Descent & Distribution applying to the distribution of property of intestate.

"I do hereby nominate, constitute and appoint

—————— to be my executor of this, my last, will and testament on this the 22nd day of September, 1925.

''[Signed]   Andrew James Crawford.

''Marie Chestnut,     }    Witnesses.''
''G. P. Brown.       }

The collateral kindred succeeded in inducing the county court to probate this paper and to set aside the order probating the paper of April 17, 1922.

## The Suit in Equity.

Mrs. Crawford instituted a suit in equity against the collateral kindred of her husband in which she sought to be, and she was adjudged to be, the owner of all the property of A. J. Crawford. On appeal to this court that judgment was reversed. See 247 Ky. 228, 56 S. W. (2d) 985, 988.

## The Will Contest.

On December 19, 1933, Mrs. Crawford filed in the Pulaski circuit court a rather elaborate pleading which is styled ''Petition,'' wherein she set out the papers we have copied above, gave names and addresses of the collateral kindred of her husband, who would be beneficiaries under this last paper, the probate of which she attacked, and she alleged it was procured by undue influence exerted over her husband by his collateral kindred, and was the result of his lack of testamentary capacity when it was made and was not his true will. She prayed for the following relief:

''Wherefore plaintiff prays that the said paper purporting to be the last will and testament of A. J. Crawford, deceased, be set aside; that same be found, and declared not to be the last will and testament of said A. J. Crawford; that warning order be made against all the nonresident defendants, as set out in this petition; and for all general, special and proper relief, to which plaintiff may show herself entitled.''

She filed as a part of her petition an official copy of the paper of September 22, 1925, including the certificate of its probate. Following that there is in this record an official copy of this order:

"Pulaski County Court.

"Regular April Term.

"April 21st, 1930.

"Present and Presiding Hon. John S. Cooper,
County Judge

"A. J. Crawford.

"Probate of Will.

"An instrument of writing purporting to be the last true will and testament of A. J. Crawford, deceased, was, on the 3rd day of April, 1930, produced in open court and proved by the oaths of G. P. Brown and Marie Chestnut, the two subscribing witnesses thereto and the court being sufficiently advised adjudged the same to be the last true will of the said decedent and ordered same to record as such.

"John S. Cooper, J. P. C. C."

The collateral kindred resisted at every point, and we shall now consider a number of preliminary questions made by them, of which we shall omit the captions, etc., and give merely the essentials.

### Motion to Dismiss.

"Comes defendants herein and moves the court to dismiss the petition of the plaintiff because she has no right to contest the will in question." This is based upon this which is found in our opinion upon the appeal of the equity suit (247 Ky. 228, 56 S. W. [2d] 985):

"The will of Mr. Crawford devising his property to his wife having been revoked by a subsequent will, she took nothing under the first, and the contract being unenforceable there is nothing left upon which to base her action."

So long as the paper of September 22, 1925, remained uncontested, that was true, but a different situation was presented the moment Mrs. Crawford began her attack upon it. True, Mrs. Crawford would have taken the same share in this estate under the paper in question as she would have taken had her husband left no will, but her efforts are directed to the rejection of this paper and the re-establishment of the paper dated April 17, 1922, under which she takes the entire estate; hence this

motion was properly overruled. The propounders had cited in support of their motion the case of Egbert v. Egbert, 186 Ky. 486, 217 S. W. 365, 366. In that case the trial court had dismissed Mrs. Egbert's proceedings, and this court in affirming the judgment said:

"Without attempting to lay down any rule as to what the contestant should allege with respect to a prior will, it is sufficient to say that no contest based on a former will can be maintained unless the former will is in existence. Here, the contestant merely alleged the execution of the prior will, making her sole devisee for life of the entire estate of the testator, and the fact that the testator safely kept and preserved it. How long he kept it is not alleged. For aught that appears in the statement or petition, the alleged former will may have been destroyed or revoked many years before the death of the testator."

The propounders insist that is controlling here, but upon an examination of this record we find: First, a copy of the paper dated April 17, 1922, is set out in the plaintiff's pleading; second, in the answer of the propounders we find this:

"Defendants refer to the pleadings, motions, papers, exhibits, depositions and entire record and proceedings in said other action No. 1134, equity docket in this court as exhibits, and makes the whole thereof a part of these proceedings and asks the court to consider and read the same as fully as if set out herein upon the trial of this action."

Not only was that done, but on July 20, 1934, a stipulation signed by counsel for all parties was filed to this effect:

"Reference was made in the pleadings and evidence at various times to the record in the case of Mrs. M. H. Gibson, et al., appellants, against Kate S. Crawford, appellee, decided by the Court of Appeals of Kentucky on December 16, 1933, opinion in 247 Ky. 228, 56 S. W. [2d] 985, now therefore, as a convenience and saving to all parties it is agreed that the complete record in said action just referred to need not be copied into this record but that said record in the Clerk's office of the Court of Appeals

is hereby made a part of this record by agreement and considered in the trial of this action and on appeal as a part of this record by reference for all purposes.''

That certainly is enough to justify examining the record on the former appeal, and, when we do, we find in Mrs. Crawford's pleading there is a copy of the paper signed by A. J. Crawford on April 17, 1922, but we find also her allegation that she made a will on the same date and her allegation that these were mutual wills, and we also find this order which was made November 1, 1930:

"By agreement of the parties by counsel, Edgar Murrell, President of the Farmer's National Bank is hereby appointed custodian of and for the court to take and keep possession of the alleged mutual wills of A. J. Crawford and Kate S. Crawford, referred to in the petition and today filed as a part thereof; and the said Edgar Murrell is further ordered to permit the attorneys of the case to examine or inspect them at any time they desire but not take them from his possession.''

Thus we not only know the paper of April 17, 1922, is still in existence, but we know its contents and right where it is and who has it; hence this case is easily distinguishable from Egbert v. Egbert.

### The Motion to Elect.

"Comes defendants herein and moves the court to require the plaintiff to elect whether she prosecutes this action as an appeal from the order of the lower court probating the will referred to dated September 22, 1925; or whether she institutes this action to contest said will and as a new proceeding.'' The court sustained this motion, whereupon Mrs. Crawford elected to prosecute this action as an appeal.

### Propounders' Demurrer.

At this point the propounders demurred to Mrs. Crawford's pleading.

The propounders contend their demurrer should have been sustained because Mrs. Crawford did not file in the circuit court a certified copy of the judgment of the county court and statement of costs and execute a

bond to satisfy and perform the judgment rendered upon her appeal. This is based on the idea that the appeal of a will contest is governed by section 724 of Civil Code of Practice.

The bond is unnecessary. See Garnett v. Foston, 122 Ky. 195, 91 S. W. 668, 28 Ky. Law Rep. 1119, 121 Am. St. Rep. 456. In Jones v. Jones, 3 Metc. (60 Ky.) 266, the procedure adopted was similar to the procedure adopted in this case, and we said of it:

"As the object the parties had in view was to appeal from the decision of the county court, and that intention was explicitly set forth in the petition, the mode of taking the appeal which was adopted did not change the character of the proceeding, or affect the rights of either of the parties. The petition was not filed as a petition in equity but solely for the purpose of procuring an appeal, and the litigation in the circuit court was, in reality, on an appeal from the sentence of the county court."

In Tinker v. Ringo et al., 11 S. W. 605, 606, 11 Ky. Law Rep. 120, the appellant's procedure was questioned, and we said of it:

"While no specific mode is prescribed in the Civil Code by which the right to prosecute such appeal may be determined, we think it was not irregular for him to file a statement, to which, as a matter of course, it was competent for the propounders to file an answer."

The procedure was questioned in Pryor v. Mizner, 79 Ky. 232, and we said:

"Filing a transcript of the proceedings in the county court with the clerk of the circuit court, and having summons issued, is all that is required. No supersedeas or bond for costs is required either in the circuit court or this court, and the executor having brought all the parties in interest before the circuit court, and presented a transcript of the record from the county court, has done everything necessary to enable him to be heard in that court. The statute in regard to wills and appeals in such cases fails to designate any particular mode or form for prosecuting the appeal, and therefore the mode adopted by or practice sanctioned for many years

will not now be disregarded. Appeals are taken in such cases to the circuit court as appeals are taken to this court, by filing a transcript of the proceedings and having summons issued.''

In Williams' Ex'r v. Williams, 90 Ky. 28, 13 S. W. 250, 251, 11 Ky. Law Rep. 828, the procedure was questioned, and this is taken from that opinion:

''The contestants had, when the appeal was taken, filed in the circuit court a statement setting forth the names of the parties, appellants and appellees; the decease of the testator; the names of his heirs-at-law; the probate by the county court at a time therein named of a writing purporting to be, but which they deny is, his will; and that an appeal was thereby taken from its action. * * * It is urged that an appeal could not be taken by the filing of it alone, and that, as the appeal is from the judgment below, a copy of it must be filed. Our statute does not say how an appeal from the county court to the circuit court in a will case shall be taken. It merely gives the right to it. * * *

''As the statute does not prescribe what shall be done to take the appeal, it is sufficient if it be made to appear, by the filing of either a transcript or a statement, who the parties appellant and appellee are, and that a certin judgment was rendered by the county court at a certain time, from which the appellants desire to appeal. Technical strictness should not be required.''

We therefore hold Mrs. Crawford's petition was sufficient to constitute an appeal from the probate of the will. This demurrer was properly overruled.

### The Plea in Bar.

The propounders, in the second paragraph of their answer, pleaded the former litigation between these parties which had resulted in favor of them, 247 Ky. 228, 56 S. W. (2d) 985, in bar of the maintenance of this action. To this particular paragraph Mrs. Crawford filed a general demurrer, which was sustained by the court, and the propounders excepted, and did not thereafter amend said paragraph. This demurrer was properly sustained. Of course, one may not after defeat

upon a cause of action institute another suit upon that same cause of action, 35 C. J. p. 802, sec. 1225, but the two causes of action must be the same. As an example of how completely this is so, we call attention to the case of Johnson v. Gordon, 118 S. W. 372, where this court held a judgment for the defendant in a forcible entry proceeding was not a bar to the maintenance of a forcible detainer proceeding. In 34 C. J. p. 805, sec. 1226, we find this which is the usually accepted test:

> "The test most commonly stated is to ascertain whether the same evidence which is necessary to sustain the second action would have been sufficient to authorize a recovery in the first; if so the prior judgment is a bar; otherwise it is not."

That is the test we applied in Kentenia Corp. v. Boreing L. & M. Co., 159 Ky. 61, 166 S. W. 780, and is the test set out in section 259 of Freeman on Judgments. She could not have joined in the equity suit her attack on the will made in this suit.

### Testamentary Capacity.

Mr. Crawford was, so all agree, a very intelligent and capable business man previous to May 1, 1925. On that day he suffered a stroke of apoplexy from which he never fully recovered. He got so he could go about by the use of a cane, but his left arm and leg were thereafter affected, his face was drawn, and he drooled or slobbered and talked with difficulty. For the contestant it is shown he had the mind of a five-year old child, that he would wander aimlessly about, had to be watched, could not carry on a connected conversation, would cry and laugh hysterically, did not sleep well, was notionate, and in fear of being killed, etc. For the propounders there is evidence Mr. Crawford's mind was not affected, that after a few weeks he was up going about his business as usual, collecting rents, looking after his crops, filing suits, renewing notes, making deposits, giving checks, etc. The witnesses are numerous, and appear to us to be equally credible. This was a typical case for a jury.

### Undue Influence.

Mrs. Crawford centered her attack upon the family of Mrs. M. H. Gibson, a sister of Mr. Crawford. The paper in contest was written in a private office in the

bank of which J. H. Gibson, the only son of Mrs. M. H. Gibson, was cashier. The attorney for the bank dictated the will to the bank's stenographer, and it was witnessed by two of the employees of that bank. Mr. Crawford had come in alone. Certainly there was no lack of stage setting. Miss Marie Chestnut, to whom the will was dictated and who is one of the witnesses to it, was introduced as a witness. We have read her evidence carefully (she is the only living witness who was present when the will was written and who testified to what was said and done then), and there is in it nothing indicating that Mr. Crawford said even one word on that occasion except to ask the witnesses to sign the will. When the will was complete, it was not put in Mr. Crawford's lock box, but was handed to Mr. Gibson, who kept it until after Mr. Crawford was dead. Mrs. Spencer, a neighbor of the Crawfords and one of the witnesses to the paper of Apr. 17, 1922, testified about a call made on her by Miss Flora Crawford, a sister of A. J. Crawford, and this is taken from her testimony:

"She said there was something she would like to ask me, and she hoped I'd tell her, and I asked her what it was, and she said she had heard that her brother, A. J. Crawford had made a will leaving his estate to his wife, and that I had witnessed the will, and she wanted to know if it was true. I told her that I didn't want to talk about their affairs, and asked her why she didn't ask her brother about it, and she said that she had already done so, and that he had not denied it. She seemed to be very angry, and said she was certainly going to do something about it. She said that Mrs. Crawford was a very evil woman, and a woman of very bad character, and that she did not intend that she should have her brother's estate, even if she had to burn them up to keep her from getting it. I met Mr. Crawford on the street a few days after that, and I told him what she said, and he says, 'Don't tell her anything, they are worrying me to death over my estate.'"

This is taken from the testimony of Mrs. Crawford:

"Did he ever make any statement to you as to how he expected to pay you back?

"Yes, we were talking one day, and he says, 'We are both getting up in years, and I want to

make a will and give you all that I have.' We had talked about that before, on other occasions he had said he wanted me to have everything he had, and he said, 'You have furnished me with money all through the years, and I want you to have every cent I have, I want to make a will and give you everything I have,' then he says, 'Lets send for Mr. Ross and Mrs. Spencer,' and they came over, and he wrote his will. And I told him that I'd make a will and give him all that I had. I gave him all I had, and he gave me all he had.

"I'll ask you to state to the jury whether or not you ever had any conversation with Mr. Crawford, after the execution of those wills in 1922, in which he said anything to you about what his relatives, or any of them, had said to him or were saying to him with regard to making another will or with regard to the disposition they wanted him to make of his property?"

Defendants' objection to the question was overruled and she answered:

"Yes, he told me that after they had learned he had made a will, giving his estate to me, that they were all very mad, and were insisting that he should not give me one cent, but should leave it to them. But he said he had helped them, that he had helped them pay their taxes, loaned them money to use in making their crops, and had let them have goods when he was in the store, and that no man, who had no more than he had, had ever done more for his relatives than he had, and that what he had left, he wanted me to have every cent of it. He said they would threaten him. Said they would burn him up, or poison him, or anything before I should have one penny that he had. They didn't know for a while that he had made the will, but after they found it out, he said they almost worried him to death about it. He said they worried him to death, all his relatives, that they wanted him to leave his property to them, and leave me out. Frequently he would come in and say that they had been talking to him, and annoying him, but he always said he was not going to change his will, that everything he had he wanted me to have. He came

in one day highly excited and told me that they had found it out, that they asked him if he had made a will giving me his property, and he said they had found it out, and that they were all very angry about it.''

The evidence shows that before this stroke of apoplexy, and when Crawford was in health and had his right mind, he loved his wife, he wrote the first will at his home, had it witnessed by his neighbors, and gave his wife all his property, and left his will in her possession.

After he had this stroke, when there is evidence his mind was impaired, he loved his relatives, his will was written at the bank of which Mr. Gibson was cashier, was dictated by the bank's attorney, was written by the bank's stenographer, was witnessed by Mr. Gibson's fellow workers, gave his wife as little as he could in view of her power to reject it, and left the will in Mr. Gibson's possession. We regard all this as some evidence of undue influence and that this question was properly submitted to the jury.

### Alleged Errors in Evidence.

The first criticism of the rulings on the evidence is directed to the two questions above. The basis of this criticism is that Mrs. Crawford was allowed to testify for herself concerning a conversation with the testator who is now dead. Defendants did not object to the first one, so they cannot complain of that; but they did object to the second question. Their objection was properly overruled, for she was simply asked if she had a conversation. The question did not call for the detail of the conversation, and when she went into that the defendants should have moved to strike or exclude all of her answer except the word, ''Yes,'' and, not having done so, cannot complain. The question was not objectionable but the answer was.

Mrs. Crawford had testified Mr. Crawford cried a great deal, and she was asked this question: ''Did you ever see him express himself in any other way?'' Defendants' objection to the question was overruled. The witness answered: ''He would often go to sleep.'' She then answered other questions regarding his physical and mental condition to which no objection was made,

but defendants, relying upon Louisville & N. R. Co. v. Rowland's Adm'r, 215 Ky. 663, 286 S. W. 929, North American Acc. Ins. Co. v. Caskey's Adm'r, 218 Ky. 750, 292 S. W. 297, and Brown's Adm'r v. Wilson, 222 Ky. 454, 1 S. W. (2d) 767, insist that having objected once to this line of interrogation, their objections having been overruled and exceptions reserved, that it was unnecessary for them to continue objecting. They are right about the rule, but this evidence was admissible. Mrs. Crawford was testifying for herself, but this testimony was upon the subject of Mr. Crawford's mental condition, concerning which she was a competent witness. Russell v. Tyler, 224 Ky. 511, 6 S. W. (2d) 707; Combs v. Roark, 206 Ky. 454, 267 S. W. 210; Caddell's Heirs v. Caddell's Ex'r, 175 Ky. 505, 194 S. W. 541; Murphy's Ex'r v. Murphy, 65 S. W. 165, 23 Ky. Law Rep. 1460.

The propounders say the court erred in allowing witnesses to testify to declarations of Crawford regarding undue influence, and in support of their position they cite: In re Wayne, 134 Or. 464, 291 P. 356, 294 P. 590, 79 A. L. R. 1427; Oberdorfer v. Newberger, 67 S. W. 267, 23 Ky. Law Rep. 2323; Wall v. Dimmitt, 114 Ky. 923, 72 S. W. 300, 24 Ky. Law Rep. 1749; Raison v. Raison, 148 Ky. 116, 146 S. W. 400; and 28 R. C. L. p. 151, sec. 107. This is directed to the testimony of Mrs. Spencer which is mentioned above under the heading "Undue Influence." We have examined her testimony carefully, and we noted not a single objection or exception to any part of it.

They complain of the hypothetical questions because, as they say, they called for the conclusions of the witnesses instead of their opinions. We had rather these questions had been in better form, but is not the opinion of an expert after all his conclusion from the facts stated to him? We are certain this was not prejudicial. Propounders cite in support of their contention Ætna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S. W. 523; Taylor Coal Co. v. Miller, 168 Ky. 719, 182 S. W. 920; Illinois C. R. R. Co. v. Townsend, 206 Ky. 329, 267 S. W. 161; Madison Coal Corporation v. Altmire, 215 Ky. 283, 284 S. W. 1068; Fidelity Mutual Life Ins. Co. v. Cochran, 187 Ky. 430, 219 S. W. 172; and Mann's Ex'r v. Leyman Motor Co., 234 Ky. 639, 28 S. W. (2d) 956.

In the above cases, questions calling for the conclusions of experts rather than their opinions were condemned, yet in two of them the judgments were affirmed, and in none of the other four does the court expressly rest the reversal upon the improper question, unless it be the case of Taylor Coal Co. v. Miller, and it is not certain it did so in that case.

The position taken by appellants is sharply criticized in 11 R. C. L. p. 583, sec. 14, but we will content ourselves in this case by saying the error, if any, was not prejudicial. The courts never allow a witness to give his conclusion on questions of law, 22 C. J. p. 634, sec. 731, except in those cases listed in 22 C. J. p. 638, sec. 732, the courts usually receive the opinions and judgments of men testifying as experts, 22 C. J. p. 638, sec. 733, and it would not be an easy matter to distinguish the opinion of such a witness from his conclusion.

### Newly Discovered Evidence.

The propounders filed the affidavit of Docia Wade setting forth matters they propose to show by her that would contradict the testimony of Mrs. Spencer, but that is not enough; the propounders should have themselves made and filed affidavits that they did not learn of what they could prove by the new witness in time to have used it on this trial, and this they have failed to do. Illinois C. R. R. Co. v. River & Rail C. & C. Co., 150 Ky. 489, 150 S. W. 641, 44 L. R. A. (N. S.) 643, Ann. Cas. 1914C, 1255; Charles Taylor Sons Co. v. Hunt, 163 Ky. 120, 173 S. W. 333; Russell v. City of Ashland, 159 Ky. 223, 166 S. W. 971; Walker v. Bingham, 256 Ky. 218, 75 S. W. (2d) 1074.

Judgment affirmed.

Whole court sitting.