Carl SPEARS, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

2013–SC–000140–MR

Supreme Court of Kentucky.

RENDERED: DECEMBER 18, 2014

Counsel For Appellant: V. Gene Lewter, Department of Public Advocacy

Counsel for Appellee: Jack Conway, Attorney General of Kentucky, Jeffrey Allan Cross, Assistant Attorney General, Office of Criminal Appeals, Attorney General's Office

## OPINION OF THE COURT BY
## JUSTICE VENTERS

Appellant, Carl Spears, appeals from a judgment of the Cumberland Circuit Court convicting him of two counts of murder and sentencing him to life in prison without the possibility of parole.

As grounds for relief Appellant argues (1) that the trial court erred by denying his motion for a mistrial after a state police detective testified that he was unable to interview Appellant because he had asked for an attorney; (2) that the trial court erred by refusing to allow Appellant's forensic expert witness to sit with defense counsel during the testimony of the Commonwealth's expert witnesses; (3) that the trial court erred by refusing to instruct the jury on first-degree manslaughter based upon extreme emotional disturbance; and (4) that Appellant is entitled to a new penalty phase trial because the penalty phase proceedings failed to comply with the capital sentencing protocols as provided for in KRS 532.025(3).

For the reasons stated below, we affirm the judgment of the Cumberland Circuit Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kenny Spears (Kenny[1]) and Timmy Medlin were stabbed to death in an altercation at Kenny's residence. Appellant admits that he was present when the stabbing occurred, but he claims that Kenny and Medlin inflicted the fatal wounds upon each other. All three men were intoxicated at the time. Appellant claims that when Kenny and Medlin began fighting each other with knives, he tried to separate them to break up the fight. As a result of that effort, Appellant sustained a number of minor injuries. He also claims that he tried CPR on the two victims in an effort to save their lives.

Appellant left the scene of the killings and went to the home of a friend to whom he reported that "something bad has happened." His friend refused to let him in to call the police, so Appellant went to another friend's home, from which a 911–call was made. Appellant told the 911–dispatcher that he had witnessed two people being killed, that he wanted to talk to the sheriff, admitted to being there at the time of the stabbings but denied that he had committed the killings; he also indicated in that call that it was possible that he

---

1. We refer to Kenny Spears as "Kenny" so that his name is not confused with Appellant, Carl Spears.

would not talk to the police until he had spoken with an attorney.

Appellant was then indicted and charged with two counts of murder. While in jail awaiting trial, Appellant associated with another inmate named Tony Spears (Tony[2]). At trial, Tony testified that he had a disagreement with Appellant and Appellant said to him, "I've done killed one Spears. Don't make me kill you too." Tony also testified that Appellant said he had watched Kenny and Medlin die and that he described their deaths in gruesome detail. The Commonwealth presented forensic evidence linking Appellant to the stabbings, including testimony that Appellant's blood was on the murder weapons, mingled with the blood of the respective victims.

At the conclusion of the evidence the jury found Appellant guilty of both killings and recommended a sentence of life without parole for both murders. The trial court entered a final judgment consistent with the jury's verdict and sentencing recommendation. This appeal followed.

## II. TESTIMONY THAT APPELLANT HAD INVOKED HIS RIGHT TO COUNSEL WAS IMPROPER BUT HARMLESS

Appellant contends that the trial court erred by denying his motion for a mistrial after Detective Michael Dubree twice testified that Appellant "had asked for a lawyer." Appellant argues on appeal that Dubree's testimony was inadmissible based upon our cases holding that testimony directing the jury's attention to the fact that a criminal defendant had invoked his right to silence or his right to counsel is unfairly prejudicial. Appellant argues on appeal, as he did in the trial court, that

Dubree's testimony warranted a mistrial because it was inaccurate—Appellant had *not* asked for an attorney or refused to talk to police. Appellant moved for a mistrial after the following exchange between Dubree and the prosecutor:

Prosecutor: Upon arriving at the hospital what information had you gathered about [Appellant]?

Dubree: At that point I was informed that there were at least two deceased persons at the residence on Judio Road and that somehow [Appellant] was involved in that incident. At that point in time I was not aware whether he was a suspect or a victim. At that point in time it was really unknown what [Appellant's] role was. *I was aware that he had asked for a lawyer.*

Moments later, after the prosecutor asked Dubree about his contact with Appellant at the hospital, Dubree testified:

And the reason I did that, while I was there [Appellant] and I did engage in some conversation; it wasn't lengthy or wasn't an interview so to speak *because he had asked for a lawyer.* But throughout the evening we did engage in some conversation ... [objection by defense counsel].

The substance of Dubree's comment is that he could not conduct a formal interview with Appellant because Appellant had invoked his right to counsel, and by implication, declined to talk to the police. The only thing cited as a possible source for Dubree's apparent belief that Appellant had elected to talk to an attorney before speaking to police was the statement Appellant made to the 911–dispatcher when he first reported the killings. Appellant said:

Spears or the victim, Kenny Spears.

**2.** We refer to Tony Spears as "Tony" so that his name is not confused with Appellant Carl

Sir, I've been around the block, I've been in and out of the court. I will talk to [Cumberland County Sheriff] James Pruett. I will tell him what happened. Other than that, *I may not even do that until I talk to an attorney because I know how things get turned around.*

The prosecutor played this recorded statement to the jury during his opening statement, and the jury heard it again when it was introduced into evidence. Appellant is not claiming that the presentation of the 911–statement constituted error. In fact, his trial counsel emphasized to the trial court that she had no objection to the introduction of the statement that Appellant had actually made to the 911–dispatcher. Rather, the mistrial was requested because Dubree's testimony mischaracterized Appellant's actual statement in a way that aroused all the prejudicial effects that result when the jury is told that instead of cooperating with police, a defendant requested an attorney.

■ As established by other evidence, including Dubree's other testimony, Appellant had not declined to discuss the case and he did not ask for an attorney. Appellant talked to Dubree, and Sheriff Pruett testified that even after being advised of his *Miranda* rights, Appellant continued to discuss the incident with the Sheriff without asking for a lawyer.

■ As grounds for relief, Appellant relies primarily upon *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), which prohibits the use of a suspect's *post-Miranda* invocation of his right to remain silent as substantive evidence of guilt. In *Doyle*, the Supreme Court held that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. . . ." 426 U.S. at 618, 96 S.Ct. 2240. Appellant complains that the Commonwealth imputed to him an invocation of the right to counsel, rather than the right to remain silent as in *Doyle*, but the fundamental unfairness recognized *in Doyle* extends as well to the misuse of a defendant's request for counsel.

■ It is worth noting that *Doyle* involved a defendant that invoked his right to remain silent after his arrest and *after* receiving the *Miranda*-warnings. The fundamental injustice addressed in *Doyle* springs from the situation in which a suspect has been informed of his right to remain silent (or to consult an attorney) only to have his invocation of that right later used against him at trial as evidence of guilt. In that sense, *Doyle* applies only to a post-arrest, post-*Miranda* warning invocation of one's rights. In *Baumia v. Commonwealth*, 402 S.W.3d 530, 538 (Ky. 2013), we held that a pre-arrest, *pre-Miranda* warning invocation of rights by a suspect was equally inadmissible in the Commonwealth's case-in-chief *if* official compulsion was present in extracting the invocation. Here however, we need not consider the pre-arrest/post-arrest or the pre-*Miranda*/post-*Miranda* warning nuances of *Doyle* and *Baumia* because in the case sub judice we address an invocation of rights that never actually occurred. The 911–statement certainly occurred before arrest, before *Miranda* warnings were required, and without any coercive influence of the police; but, it was not fairly cast as "asking" for an attorney or an invocation of that right, nor does Appellant claim it as such.[3]

---

**3.** It is certain that Appellant's 911–statement would not qualify as an invocation of the right to counsel *if* he was asserting it to challenge an unlawful custodial interrogation. Our precedent strongly and uniformly holds that "a request for counsel must be 'unambiguous

■ We agree with the general principle of *Doyle* that in a criminal case, some prejudice to the defendant will ordinarily flow from evidence suggesting that he declined to cooperate with the police and chose instead to remain silent until he could consult an attorney. The "fundamental unfairness" inherent in such evidence is even more pronounced for the individual whose defense is. burdened with an alleged invocation of constitutional rights that never occurred. We agree that Dubree's testimony that Appellant had requested an attorney was improper—not based upon whether it occurred before or after his arrest, but because it *never* occurred. Appellant never made the statement imputed to him by the officer's testimony.

■ It is, however, well-established that *Doyle-type* errors are subject to harmless error analysis pursuant to the constitutional harmless error standard. *Wallen v. Commonwealth,* 657 S.W.2d 232 (Ky.1983); *Baumia* at 539; *Winstead v. Commonwealth,* 283 S.W.3d 678, 689 n. 1 (2009) (citing *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.")); RCr 9.24 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties."). Under this inquiry we ask whether "absent [Officer Dubree's testimony as to Appellant's reference to an attorney], is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?" *United States v. Hasting,* 461 U.S. 499, 510–11, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (citation omitted).

■ *Baumia* identified a three-prong test to aid in this determination: "(1) the extent of comments made by the witness, (2) whether an inference of guilt from [the invocation of the right to counsel] was stressed to the jury, and (3) the extent of other evidence suggesting the defendant's guilt." *Baumia* at 539 (quoting *United States v. Velarde–Gomez,* 269 F.3d 1023, 1034 (9th Cir.2001)). Here, Officer Dubree made two references to Appellant's suggestion that he may want to speak to an attorney before talking to police. The point was not stressed to the jury. Moreover, other evidence was presented to the jury to fairly dispel any impression left by Dubree that Appellant was not cooperative. With Appellant's agreement, the jury heard the recording of his statement to the 911–dispatcher; they could fairly and accurately gauge from it Appellant's expressed desire to talk with Sheriff Pruett. They heard evidence that he did in fact talk about the incident to Sheriff Pruett and to Detective Dubree.

Finally, the evidence presented by the Commonwealth was strongly indicative of Appellant's guilt. Appellant was the only living witness to the stabbing death of two men. His blood was identified on at least two knives used in the stabbings, comingled with the blood of the victims. The theory that two victims stabbed each other to death is certainly not compelling. And, Tony Spears testified that Appellant said that he had already killed "one Spears"

and unequivocal' ... custodial interrogation must cease when an accused ... 'has *clearly* asserted his right to counsel.' " *Dean v. Commonwealth,* 844 S.W.2d 417, 420 (Ky.1992), quoting *Edwards v. Arizona,* 451 U.S. 477, 485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

*See also· Bradley v. Commonwealth,* 327 S.W.3d 512, 516 (Ky.2010) ("[T]he police must cease interrogating a suspect *only if the suspect clearly and unambiguously asserts his or her right to counsel* [.]" (emphasis added).)

(Kenny) and that he had watched Kenny and Medlin die.

Given the evidence, it is clear beyond a reasonable doubt that the jury's verdict would have been the same in the absence of Detective Dubree's testimony. Therefore, we find any error in the admission of Dubree's testimony regarding Appellant's invocation of his right to an attorney to be harmless beyond a reasonable doubt. It follows that the trial court did not err in denying Appellant's request for a mistrial. *Winstead v. Commonwealth*, 327 S.W.3d 386, 402 (Ky.2010) ("A party must make a clear showing of 'manifest necessity' for a mistrial, and we review a trial court's denial of a motion for a mistrial for an abuse of discretion").

## III. DENIAL OF APPELLANT'S REQUEST TO PERMIT HIS FORENSIC EXPERT TO SIT WITH TRIAL COUNSEL

■ At the beginning of the trial the Commonwealth invoked the rule for the exclusion of witnesses provided by KRE 615. On the third day of trial, however, prior to the testimony of the Commonwealth's forensic experts, Appellant requested that his own forensic expert witness, Lawrence Renner, be permitted to sit at the defense table for the purpose of assisting trial counsel in understanding and cross-examining the Commonwealth's expert witnesses. The Commonwealth objected; the trial court denied the request, stating unless the Commonwealth agreed, "[s]ince [Renner] wasn't here when the other witnesses testified I'm going to not permit him to sit in and listen to testimony." Appellant contends that he is entitled to a reversal of his convictions as a result of the trial court's exclusion of this expert from the courtroom during the testimony by the Commonwealth's expert witnesses.

■ KRE 615 provides as follows:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order on its own motion. This rule does not authorize exclusion of:

. . .

(3) A person whose presence is shown by a party to be essential to the presentation of the party's cause.

Whether the witness is deemed "essential to the presentation of the party's case" is a matter to be determined by the trial court in the exercise of its sound discretion.

■ The purpose of KRE 615 is to prevent a witness's testimony from being influenced by the testimony of other witnesses. *Smith v. Miller*, 127 S.W.3d 644, 645–46 (Ky.2004). When requested by either party, exclusion of witnesses at trial is mandatory in the absence of one of the exceptions enumerated in the rule. *Mills v. Commonwealth*, 95 S.W.3d 838 (Ky. 2003). Appellant contends that having Renner present at counsel table during the testimony of the Commonwealth's experts was "essential" to the presentation of his case, and thus he satisfied the exception contained in KRE 615(3), despite the Commonwealth's objection.

While the advantages, or at least the potential for advantages, of having one's own expert present to hear the testimony of the opposing party's experts are self-evident, it is not immediately apparent that the expert's presence is "essential" to the cause. Ultimately, Appellant supports his claim with only the vague and general conclusion that "[Renner] was well prepared, and could have helped the defense immeasurably by listening to the testimony of the Commonwealth's experts and

lending a helping hand on cross examination."

Now, even with the advantage of hindsight, Appellant fails to identify any *specific* contribution Renner could or would have made to Appellant's case had he been present in the court room during the testimony of the Commonwealth's expert witnesses. Neither has he shown how, with Renner's presence, he might have had more success in refuting the Commonwealth's theory of the offense.

Instead, Appellant argues that our rule for the exclusion of witnesses should apply only to "ordinary witnesses," preventing them from "tailoring their testimony to match that of others." Expert witnesses, Appellant contends, should be allowed, or even encouraged, to hear and comment upon the testimony of other witnesses, especially the opposing experts. We disagree. First, that is not the rule that was in effect when this case was tried. Second, Appellant's suggestion would significantly alter the way a case is tried by having expert witnesses indirectly debate one another, point and counterpoint, as they go through direct examination, cross-examination, and redirect examination. We do not see that as an improvement to the truth-seeking function of the jury trial. We favor the time-honored tradition of each expert setting forth his or her opinion, subject to cross-examination by opposing counsel, and letting the jury determine the more credible view.

In *Hatfield v. Commonwealth*, we said that to meet the KRS 615(3)-exception to the rule on the exclusion of witnesses:

> [T]here must be a *showing* that the witness is essential to furthering a party's cause. Whether a witness is essential, is and will remain under the discretion of Kentucky's trial judges. This Court will not attempt to supplant its judgment therein and abdicate a time honored judicial tradition of allowing a trial judge to be the arbiter of the decisions placed before it.

250 S.W.3d 590, 594 (Ky.2008); *see also* ROBERT G. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK, § 11.40(3)(b) at 881 (5th Edition 2013) (the party seeking an exemption to KRE 615 bears the burden of proof.)

Appellant contends that the trial court seemingly erred when it concluded that it could not allow Renner to be present in the courtroom during the trial unless the Commonwealth agreed. In light of Appellant's failure to show the trial court that Renner's presence would be essential to the presentation of Appellant's defense, we are constrained to agree with the trial court that allowing him to remain in the courtroom absent the agreement of the Commonwealth would have been error. Thus, we find no abuse of discretion by the trial court on this point; there was no error.

## IV. APPELLANT WAS NOT ENTITLED TO A FIRST–DEGREE MANSLAUGHTER INSTRUCTION

Appellant next contends that the trial court erred by denying his request for an instruction on first-degree manslaughter based upon the theory that the jury could have reasonably believed from the evidence that he committed the stabbings, but that he did so under the compelling influence of an extreme emotional disturbance (EED). First-degree manslaughter is a lesser degree of homicide than murder.

As with any lesser degree of an offense, "[a]n instruction on [first-degree manslaughter] is proper only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense

[of murder], and yet believe beyond a reasonable doubt that he is guilty of the lesser offense [of first degree manslaughter]." *Hudson v. Commonwealth,* 385 S.W.3d 411, 416 (Ky.2012) (citing *Houston v. Commonwealth,* 975 S.W.2d 925, 929 (Ky. 1998)). The trial court has no duty to instruct on theories of the case that are unsupported by the evidence. *Payne v. Commonwealth,* 656 S.W.2d 719, 721 (Ky. 1983); *Driver v. Commonwealth,* 361 S.W.3d 877, 888 (Ky.2012).

■ To support a manslaughter instruction based upon extreme emotional disturbance, there must be evidence that could induce a reasonable jury to believe that in causing the death of Kenny Spears and Timmy Medlin, Appellant acted with "a temporary state of mind so · enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from [an] impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *McClellan v. Commonwealth,* 715 S.W.2d 464, 468–69 (Ky.1986). "[T]he event which triggers the explosion of violence on the part of the criminal defendant must be sudden and uninterrupted. It is not a mental disease or illness.... Thus, it is wholly insufficient for the accused defendant to claim the defense of extreme emotional disturbance based on a gradual victimization from his or her environment, unless the additional proof of a triggering event is sufficiently shown." *Foster v. Commonwealth,* 827 S.W.2d 670, 678 (Ky. 1991) (citations omitted). And, the evidence must establish "a reasonable explanation or excuse" for the EED, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." KRS 507.020(1)(a).

In support of his argument, and acknowledging "the exact sequence of events is not known," Appellant cites Tony Spears' testimony to the effect that earlier on the day of the homicides, Kenny Spears slapped Appellant on the back of the head and elbowed Medlin because Appellant and Medlin had referred to Kenny's girlfriend as a "snitch and bitch," or a "snitchin' bitch." Appellant cites the fact that all three participants in the homicidal event were intoxicated. Tony Spears also testified that Appellant told him after the killings that Medlin and Kenny tried to make him leave because he attempted to steal a beer. Appellant also cites to the violence and brutality of the crimes as evidence of EED.

■ Upon examination of Appellant's argument, we are not persuaded that he has identified any legally sufficient triggering event that could· have induced within him "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from [an] impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *McClellan,* 715 S.W.2d at 468. The relatively minor disagreements Appellant cites as the triggering event—being slapped on the back of the head and later being told to leave because he had stolen a beer—are not the types of enraging or inflaming events that. could induce in the minds of a jury a reasonable belief that Appellant's judgment was overcome causing him to act uncontrollably. To make such a finding upon evidence of this nature would require the jury to resort to sheer speculation. Theories based upon speculation will not support jury instructions for lesser included offenses. *See Brown v. Commonwealth,* 313 S.W.3d 577, 626 (Ky. 2010). The trial court did not err in re-

jecting Appellant's request for a first-degree manslaughter instruction.

## V. PENALTY PHASE ISSUES

■ Appellant's final argument is that the penalty phase proceedings failed to comply with the capital offense sentencing protocols provided in KRS 532.025(3). He concedes that this issue is not preserved but requests palpable error review.

Specifically, Appellant complains that the penalty phase of his trial was conducted in two stages rather than one. KRS 532.025($l$)(b) directs that in capital cases, if the jury has returned a verdict of guilty, the trial court shall first conduct an evidentiary hearing, and after being appropriately instructed "the jury shall retire to determine whether any mitigating or aggravating circumstances, as defined in subsection (2) of this section, exist and to recommend a sentence for the defendant. Upon the findings of the jury, the judge shall fix a sentence within the limits prescribed by law." KRS 532.025($l$)(b). The statute plainly requires the jury to determine the aggravating and mitigating circumstances *at the same time* that it "recommend[s] a sentence for the defendant" after which the trial court fixes the sentence.

Contrary to that statutory protocol, the trial court first had the jury deliberate to consider the mitigating or aggravating circumstances. Then, after receiving the verdict on the aggravating and mitigating circumstances, the trial court conducted a second hearing after which it was instructed upon the range of penalties that could be imposed. The jury then deliberated again to render a verdict on the sentence. The Commonwealth concedes that this procedure did not conform to the statute.

■ Since this error was not properly preserved, our review is limited to the manifest injustice standard contained in RCr 10.26. Under RCr 10.26, we may grant relief for an unpreserved error when the error is: (1) palpable; (2) affects the substantial rights of a party; and (3) has caused a manifest injustice. *Commonwealth v. Jones*, 283 S.W.3d 665, 668 (Ky. 2009). "Manifest injustice" requires showing a probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law, i.e., the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 3–4 (Ky.2006).

While the correct capital sentencing protocols as set forth in KRS 532.025(3) were not followed in this case, we are convinced that this deviation from the statutory procedure did not affect the ultimate sentence in any way and was not such a fundamental error as to jeopardize Appellant's right to due process of law. In the final analysis, the same information was presented to the jury, albeit perhaps in a slightly different order. Appellant enjoyed the full opportunity to make his arguments in favor of mitigation and mercy. He is not entitled to have his sentence reversed and remanded for a new sentencing hearing.

## VI. CONCLUSION

For the foregoing reasons, the judgment of the Cumberland Circuit Court is affirmed.

All sitting. All concur.